Good morning, your honors. Counsel, may it please the court. My name is Britt Eisley. I represent the Village of Arlington Heights and the appellant in this action. This is an appeal, as you know from the circuit court, for a claimed injury under the Illinois Occupational Disease Act. And though I raise all issues in my brief, I'd like to spend time today mainly on 1F, the Section 1F of the Occupational Disease Act. As you know, no cause of action under the Occupational Disease Act, specifically, no compensation shall be payable for or on unless disablement occurs within two years of the last date of the last exposure. Here, quite simply, this condition precedent of having an exposure wasn't proven. No cause of action can arise here under the Occupational Disease Act because, as Mr. Duda and his client, Mr. Collignan, put out, his injury, his disablement occurred June 2, 1998. So we're looking for an exposure date between 1996 and 1998. And it simply, nothing in the record shows that. That two-year statute of repose to show an exposure just does not exist in the record. What about the argument that this was not caused by a single discrete incident? It was a stress of the job over a period of years. How does that jive with your argument? I think the statute of repose is still in place. In other words, there still has to be something that happened in those two years. There were plenty of stories of things happening in the 70s and the 80s by my witness and by his witnesses, but nothing that happened in those two years. Are you saying there was no testimony as to a specific incident during those two years? That's right. But wasn't there testimony that these kinds of incidents were ongoing, regular in the job, happened all the time, including the two years before? Yes, there was testimony like that, Your Honor, but So really your argument boils down to unless he testifies about a specific traumatic incident during that two years, it's not enough to say here's examples of the kinds of incidents and those kinds of examples happened right up until the day I was off the job. That's right. That's my argument. Okay. Wasn't that, though, removed from the possibility of establishing a claim that you could never have a claim then based on a cumulative effect of a number of incidents over the years unless somebody is able to relate a specific single traumatic event? That kind of argument was made in the two cases I cited, Dickerson and Whitney. You know, the asbestos case, you know, this small latency, and of course these are different exposure periods under 1F, but the petitioner arguing, you know, this is unfair to the petitioner because we have such a small period of time of exposure, but the law is the law. And addressing your concern, there isn't a rebuttable presumption in this case as firefighters enjoy right now. So it's not enough just to say that acts of heroism, you know, just are rebuttably presumed to happen right up to the last day of employment. He has the burden to prove it. But just a minute. Let me go back to my question. Wasn't there testimony that these kinds of as having happened in earlier years also continued to happen between 96 and 98? That was his argument, but I don't believe anywhere in the record there showed a discreet exposure. You're right. Okay. Again, not a discreet exposure, but that these are examples, but this kind of thing happened all the time. I mean, wasn't there testimony that they went out on calls several times a day and they were all, you know, 40% of them or whatever, I don't remember the percentage, were life-threatening calls? Yes. That's right. Firefighter lock card, firefighter on- And that all that was stressful. That's right. And they were with Mr. Collignan in the 70s and 80s. But is that enough to show that there was this exposure? I mean, I think we should hold him to 1F, which requires that there's this two-year statute of repose. So if he would have testified about one specific incident in that two-year period, then you'd say he's fine? Then the exposure period is there, right. But if he says these kinds of terrible things happened all the time over the two-year period without describing a specific one, he's out. That's your argument, right? I think that's right. That's my argument. Because I think by doing that, you're just giving him the benefit of a presumption that it just must have happened. He even argued in his brief, this happened the day before I retired. And if it was such a horrendous exposure, exposures to trauma and injury, other people's injuries, why didn't he remember it the day before he retired? He could have been cross-examined. He was cross-examined. I mean, there was testimony that these things continued to happen. Right. I cross-examined him, and I believe that, unfortunately for Mr. Colligan, his memory was very, very vague. And he tells me about things that happened decades before. Mr. Allman, Mr. Lockhart told me about things, told me and told Mr. Duda about things that happened in the 70s and 80s. Mr. Duda's application says June 2, 1998. I don't think we can just say that anything that happened between the 70s and 1998 just must presumably be an exposure. All right. So your point is subtle. You're saying this case turns on a lack of proof. That's right. You're not saying that somebody could not, a claim could not be predicated upon a series of traumas over a period of time. You're saying you recognize that, but in this case, there's nothing to sustain that there were these traumas compelling enough to establish the disablement within two years. That's right. It's against the manifest way of the evidence. There's nothing in the record showing between, in that two-year period, that there was any exposure. In general testimony about ongoing traumatic events, you're saying it's not sufficient or should not be sufficient. Not always. In this case, the Commission found a reasonable inference. I suppose that's how they found it, that there's a reasonable inference that because of all these other testimonies, it must be that in those two years, he suffered an exposure. What does the claimant mean by saying you waived the decision? I think he means that it's a statute of limitations, and he thinks I waived it. The case law, though, says this is a statute of repose, so it's jurisdictional. And I can bring it up any time, and the court can bring it up sua sponte. So we have a difference of opinion. The case law clearly says it's a statute of repose. It's not a statute of limitations. I really have nothing further. I would let my brief speak for itself about causal connection, and for these reasons and other reasons in my briefs, I respectfully request that this Court reverse the Circuit Court's decision denying TTD medical impermanency. Thank you, Counsel. Thank you. Counsel, please. Good morning, Your Honors. May it please the Court. Counsel, my name is Thomas Duda. I represent the defendant in this case. And number one, the record clearly establishes that we met all the requirements of 1F, despite the fact that the issue was never raised at the hearing in this case or before the Workers' Compensation Commission. And I was very pleased to hear the Court's familiarity from the last case before this one on how waiver of an issue before the Commission means that this Court can't hear the issue. I want to point out to this Court that the cases cited by the defendant in its reply brief contradict what the respondent just told you. 1F is a statute of limitations under the Goodson case cited on page one of their reply brief. They mention another case of Eschbach versus the Industrial Commission in which the appellate court held that 19H was jurisdictional and therefore could not be waived. In establishing that rule of law, the appellate court in Eschbach cited by the defendant, by the plaintiff in this case, distinguished Goodson. And it said 1F is a statute of limitations, 19H is jurisdictional. So the argument just presented to this Court has no legal foundation under the Eschbach case and Goodson cases cited by the plaintiff. I would call the Court's attention to the record at page 35 in which the arbitrator went through the matters in dispute. Matters in dispute are accident and or exposure, causal relationship, medical bills, temporary total disability benefits, maintenance benefits, nature and extent of injury, counsel. Does that accurately reflect the issues, the matters at issue here? And Mr. Isley stated on page 39, yes, in the request for hearing sheet, a statute of limitations or 1F is never mentioned. Now, that's important not only because they waived the issue legally, but why would I, in my direct examination of a witness, elicit and focus testimony that exposures continued up to the date that he left employment when no one raised the issue? Why would I produce evidence for an issue that no one told me was going to be in the case? But the reality is, is that the evidence clearly shows that my client was exposed to the hazards of his occupation up to the very day he left. Counsel conveniently tells this Court that my client retired. My client didn't retire. My client was placed on involuntary disability as a result of the action of Deputy Chief Lockhart. The Court will hear more about Deputy Chief Lockhart because he was a witness on behalf of the village in this case. My client was at the station, at work. He was performing paramedic EMS duties that exposed him to what one letter describes as carnage up through the very day he left his employment. His employment terminated June 2, 1998, pursuant to a letter which is found in the record at pages 571. And you see this letter, it's three or four places, 571, 637. And it says, Dear Bob, I've evaluated Mr. Collignan on the results of his recent laboratory and personal wellness report from Harper College dated 1-8-1998, well within the two-year period. And the doctor goes on to say that Mr. Collignan cannot continue his duties as a firefighter paramedic for the village. And he's, quote, his recent psychological stressors, his recent psychological stressors, recent, do aggravate his physical condition and certainly enhance their effect on his capabilities. Dr. Zidlow, in the brief presented by the defendant, is described as a doctor who has no knowledge of my client's condition. He's a doctor who's a personal friend. He was never actually the treating physician of my client and had no knowledge of what my client did. Dr. Zidlow is the village's doctor and he is the motivator. He is the reason my client doesn't work for the village of Arlington Heights anymore. So, what direct evidence- Which doctor gave that letter? I'm sorry? Which doctor was it? Stanley Zidlow. Stanley Zidlow is the doctor that Battalion Chief Lockhart said was the preeminent physician in the state of Illinois understanding the risks and hazards of paramedics on a daily basis. Dr. Zidlow was the person who created the paramedic program for the village of Arlington Heights and five other municipalities. And I'm going to go into what Dr. Zidlow said when he gave his opinion unequivocally of causal connection. But I wanted, and I normally don't read to the court, but the record here is so crystal clear- What do you understand as psychological stressors? When you get to the scene of an accident and you find someone beheaded, that's a psychological stressor. Okay. So, well- There's a photograph of a suicide victim in the file in which he was decapitated by a shotgun. That was one of three episodes that my client witnessed in the course of his career. Okay, but we're talking, the doctor uses the term psychological stressors. Are we all supposed to know what they are? How do we know they're not something that happens at home? Because Dr. Zidlow refines it in the report that he provided and was placed in evidence in this case. He described what the stressors were in his report, which the court will find at the record pages 178 to 179. So he does define it as what he belated? He does. Yeah. Okay. A lot of these letters were not made for litigation. In other words, when Dr. Zidlow wrote to Deputy Chief Lockhart, he wasn't writing because he was trying to prepare a workers' conference order. Someone may be unfit for duty because of trauma at home, things that are going on totally irrelevant to the job. Well, there's no evidence of that. Well, I don't know. I mean, I don't know what psychological stressors are until you told me they were defined as what they are. Okay. On pages 16 and 17 of my brief, I actually quoted extensively, and I'm not going to read this to the court because I, believe me, I realize how boring that is and it's, you've already, this is the second case. But I did, you are going to have to listen to the staff at Northwest Community Hospital. Northwest Community Hospital is the hospital through which the paramedic program for Arlington Heights is run, and this is in 1992. Now, I do understand this is outside the 1F period, but 1F has been waived and we're going to connect this up later. But the letter unsolicited to my client recognizing his service for the village says, quote, most people will never know the sacrifices you have made in terms of time, lack of sleep, and meals that have been hurriedly snatched between calls. They could not imagine the environmental conditions in which you perform magnificently, such as cars overturned in pools of mud, accident scenes with physical and human carnage, or buildings filled with smoke and hazardous gases. Many could not look past your professional exteriors to see the price you have paid emotionally after years of encountering stressful situations involving pain, loss of life, and in the case of my client, then testified at my request, I said, in the last five years, what type of these duties, these events have you witnessed? And he said, every time I go to work. I have three to five calls up through the last day that I worked. And that testimony is supported by Deputy Chief Lockhart, who worked with my client up until he was forced to leave the employment for the village of Arlington Heights. And he was asked, how often did you go on calls with Mr. Collignan? And he answered, hundreds to thousands. That was Deputy Chief Lockhart's testimony, which is the witness offered by the village. And then he was asked, how many of those calls involved life or death situations? And he estimated about, he referred to those as advanced life support calls, and he said, a third of the calls we went on were of that magnitude. So to really call out what you're saying, waiver aside, you're saying that the testimony establishes, to counter opposing counsel's argument, that he testified to ongoing recent traumatic events within the two-year period, even though he didn't delineate in detail the nature of those. That is exactly correct. It's established, you're saying, these are traumatic events backed up by the doctor's reports of recent traumatic events. He doesn't need to delineate from A to Z a specific incident. That's correct. That's correct. Was all this evidence produced for a line of duty, disability? Yes, and he won. Actually, I didn't get into that. That's another line of argument. But my argument is that we didn't have to try this case at all. This was a disputed case before the Arlington Heights Firefighters Pension Fund. All the doctors whose reports we used in this case were, except for Dr. Zidlow, part of the pension case in the pension fund found that he was disabled as a result of an occupational exposure at work, and he was a pre-1977 worker. This petitioner was hired in 1969 before the offset provision of the pension code was enacted, and that's why we're here. But he's already, yeah, he already proved his case before the pension fund. So A, there's no question the village waived this. B, 1F is not a jurisdictional requirement. It's a statute of limitations. And C, even though I wasn't asked, it just so happens that the record clearly establishes exposures up through June 2, 1998, the last day of work. And but for Dr. Zidlow, Mr. Collignan would have worked until the end, complete end of his career. The only reason he stopped working is Dr. Zidlow. Thank you very much. Do you have a plea? Thank you. In the request for hearing, counsel mentioned that I had waived accident because it wasn't marked. It was marked. It's accident, really what it is here is exposure. It's under the Occupational Disease Act. And at the time, by the way, I didn't know what I was dealing with, whether it was a disease or an accident or an impairment. There's no discovery. So we checked that accident was an issue. That's on Appendix 9 of my brief. Assuming you did that, he's raising a specific, he's quoting from a transcript in which allegedly you were specifically asked whether or not this was something. If there's any other issues such as this issue of repose that you wanted to present at the trial, and he's quoting you as saying no. I don't think it's, when we have an Occupational Disease Act question, and I check accident as one of the issues, I expect that not only, I expect that we'll hear what the accident was, what the exposure in this case was. And there just simply wasn't one. To rely on recent report, which is a very good narrative summary of a firefighter's job, is not sufficient for that two-year 1F period. But you argued that the evidence didn't establish disablement within two years at the hearing. Did that issue come up? After the arbitration hearing, yes. It was pretty clear from all of the evidence that there wasn't that two-year statute of repose. Remember, this is a condition precedent. I you file your workers' comp, your Occupational Disease Act application. It's almost as if, say for example, in a workers' comp case, you don't have an accident, but you claim one in your application, and you file the application, and it's done so within the two-year statute of limitations, but there was no accident. I checked off accident because there was no exposure here. And so that statute of repose is lost. Again, I would ask the Court to look at these cases, particularly Whitney and Dickerson, which have not been overturned, which both say that merely filing an application within the appropriate number of years after exposure under Section 6C is not sufficient. If the employee does not establish disablement following the last exposure within the applicable period under 1F, that is still good law. That hasn't been overturned. And this is Whitney that I'm citing from, and that 1F is a statute of repose and therefore a condition precedent. It's a jurisdictional requirement, not a statute of limitations. Addressing counsel's question about res judicata and estoppel, that argument was lost at all weren't a party that the village was not a party to the pension funds case, and secondly, that it wasn't the exact same question. So I don't think that Mr. Judah can just rely on the pension case to win his workers' comp case. Thank you. Thank you, Counsel. The Court will take the matter under advisement for disposition.